Counsel, you're up first. Thank you, Your Honor. How are you doing today? You fine today? Just great. Good afternoon, Your Honor. This is People v. Wallace. This is a post-conviction case after an evidentiary hearing. It was denied by Judge Michael Cook after the evidentiary hearing. We're raising a claim of ineffective assistance of counsel because trial counsel failed to interview and present an alibi witness. The alibi witness was by the name of Calvary Brown. He was the uncle of Mr. Wallace. He testified at the evidentiary hearing that he lived at 10 Bible Drive, which was his mother's house, and it's seen of the alibi that was put forward by Mr. Wallace at trial that on December 4, he returned to the residence, and it was around 7, 8 o'clock. He came home, didn't quite know exactly what time it was, but he knew that Mr. Wallace was at home with his son inside the residence. He then sat out in the driveway of the residence by a friend's car and visited for most of the night. This occurred on December 4, December 5, 1999, and you might be kind of concerned that it's December and he's sitting outside in December, but if you look at the historical records and weather sites. And this is all in the record? Not this part. So you're going to get something that's not in the record? What? I don't think we can take anything that's not in the record, can you? You can look at historical records on the Internet and they'll tell you that there's a mile of records. Everything that's true that's on the Internet is everything. Weather.com, the Farmers Almanac, the Weather Channel, all of those sites have historical records in which you can call up. And it was a mild day, December 4th, a mild night turning into that evening, then becoming slightly colder. But, you know, that's just to assuage any idea that you'd be saying, well, that's really improbable. That's not true. It's not improbable. He remained around in the driveway and never saw Mr. Wallace leave. He was in a position to know that Mr. Wallace was remaining within the house. He was drinking some beer. He was visiting. And so all those kind of things came into play. The key testimony by Mr. Brown was that he was never contacted by Mr. Wallace's trial attorney, Mr. Steele. And in its brief, the State does not point to anywhere in the record that refutes this testimony. In fact, the State relies upon conversation that Wallace had with Mr. Steele, in which Brown said, I told Mr. Steele that I wanted Mr. Brown to testify, and he said, I had already had people saying that I was at home, so I didn't want to call him. Now, the State called Mr. Steele, William Steele, at the evidentiary hearing, and he testified that he called multiple witnesses for the alibi defense. Well, technically, he did. He called two. He called the absolute minimum required to qualify the word multiple as being true. Grandmother and the aunt. A grandmother and an aunt. Yeah, yeah. Two people who were inside the residence. And he also testified, interestingly, that he did not know about Mr. Brown before the filing of the petition. That's interesting to me because, as I point out in the brief, Mr. Wallace testifies at trial that he was at home and his uncle, Mr. Brown, was there. And so this is the point at which Mr. Steele has put on notice that Brown is a potential alibi witness. It may have occurred earlier, I don't know. But at that point, we know that Mr. Brown has put on notice that Mr. Brown is a potential alibi witness. When was the post-petition filed? It was filed September 2004 or something. The original post-conviction petition was filed in 2004. And when was the hearing on that? The hearing was much later, six years. Seven years? Seven years later. Wow. Why? Justice Brian Sloan insured the hearing. Seven years before they had the hearing? Until they had a hearing, yes. I have nothing to say besides I don't think that should take that long. But in St. Clair County and some other counties, that's not all that unusual. But we've got to work with it. I don't understand that. Seven years to do that thing. If you would want to issue an order saying that seven years is too much and he gets a new trial, I would be all behind you on that. I'll be him first. I have not put forward that idea, but seven years is a long time. I don't understand. Is St. Clair County a county where you have to call it up, call up the hearing? Well, he was represented by P.K. Johnson and Mr. Johnson kept continuing the case. And he filed several different amendments to the petition. For seven years? I don't understand. Whatever. So that's what we got. And in his testimony, Mr. Steele testified that if you call more than two or three witnesses to say the same thing, in my experience, the jury tends to not pay attention. The idea is you're presenting the witnesses to have them impart their information to the jury but not to be redundant. And he did admit he only called two ally witnesses. But what his testimony had been, I didn't see him leave the building, not that I knew where he was and saw him at all times. Who were you talking about? Brown. Brown? He said that he was outside in the driveway, that Wallace was inside the residence. He knew that Wallace was inside the residence with his son and that he knew that Wallace could not have left any time. There's no back door and he knew he was there even though he didn't see him. Well, that he was around in the area and that he knew that Wallace would be inside the residence because he could tell that Wallace never left, maybe through the front door. But that would be a matter for the jury to determine whether they want to believe that or not, but not as to providing the alibi itself. The key part of Steele's testimony is that he was talking about this as a trial strategy. Except it's very interesting to me that at trial he presented five different witnesses about one evidentiary point, and that was whether Wallace was ever known by the name Smith. The two alibi witnesses, the aunt and the grandmother testified to it, and Steele brought in three other witnesses to testify that they never knew Steele or never knew Wallace to be known by the name of Smith. So that is directly contradictory to the idea that this is a trial tactic because this trial tactic was to present a number of witnesses on key points. Also, again, the key testimony with Steele was that he testified that he did not know about Brown until the petition was filed by Wallace. But you have to look, you can get at the testimony of Wallace where he testified that Mr. Brown was present and Steele was put on notice about that. Judge Michael Cook, at the end of the evidentiary hearing, found that trial counsel's strategy was sound and denied the petition. We argue that that was error. There was a substantial showing made by Mr. Wallace that counsel was ineffective and this ineffectiveness deprived Wallace of a fair trial. We constantly would ask Your Honors to reverse and remand for a new trial. Thank you, Your Honors. Thank you. Thank you. May it please the Court. Counsel, my name is Sharon Shanahan and I represent the people of the state of Illinois. Defendant claims that his trial counsel was ineffective because he didn't call a third witness, a third alibi witness, to testify to exactly the same thing that the first two alibi witnesses testified to. And I think it's important to note that Mr. Brown is the defendant's uncle. His aunt and his grandmother both testified that he was home all night and Mr. Brown is simply another relative of the defendant's who's going to say that he was home the night of the murders. This, in and of itself, volumes of case law point to the fact that close familial relationships are, you know, we kind of wonder about him because of course you want to help your kid or your wife or your niece or your uncle or whatever. So adding just one more relative of the defendant's to say he was there, it's hard to imagine how that could possibly have been such a grievous error to deny the defendant a fair trial. I think it's also important to note that the grandmother and the aunt had no baggage. They were just little old ladies who lived in this house. You can't say that about Mr. Brown. First of all, when he testified at the post-conviction hearing, he noted that he'd been out, and this is a quote, he'd been out ripping and running, meaning that he'd been out drinking and partying. And he also went and got a bag of wheat. So he's under the influence of alcohol, he's been using drugs. He admits leaving at one time to go to the liquor store to get some more beer. And although he said it wasn't gone long, this murder occurred just really close to where the defendant was staying with his aunt and his grandmother. So being gone just a very short time could be long enough to miss him. Furthermore, Mr. Brown claims he lived at 10 Violet Lane, and yet when the defendant's grandmother and aunt were asked who lived there, neither one of them mentioned Mr. Brown. And keep in mind that the defendant's grandmother is Mr. Brown's mother. You would think if you asked his mother who lived with you that she would remember that her son lived with her. But she doesn't mention him, the aunt doesn't mention him. Nobody mentions that he lived in this house at trial. Brown also claims that he was sitting in this driveway from 7 or 8 o'clock at night until the next morning. But the defendant himself and his aunt both placed his arrival home at between 9 and 10 o'clock that night. So you've got Mr. Brown saying, yep, the defendant was there from 7 o'clock on. And you've got the defendant saying, no, I didn't get there until about 9. But still had more than 7 years to do this hearing? I understand that. And you know, I think that may be part of, it could have caused a problem for Mr. Steele in this case. Because Mr. Steele is trying to recall a jury trial that he conducted 10 years earlier. The trial in this case was 10 years before the evidentiary hearing on this post-conviction petition. So now we're asking Mr. Steele, do you remember who you talked to? Do you remember what you asked him? Well, do you remember what you said? This case sends back the thing again. 14, 15 years afterwards? I agree. I think. They wait over 7 years for one hearing? I don't understand that. If you're going to put that in anybody's lap, it has to be in the lap of counsel for the defendant for getting all these continuances. However, he did amend the petition several times. And in fact, the very issue that we're standing up here and talking about was the last amendment that he made to it. This very issue, the defendant takes all of the amendments to the post-conviction petition that came across over the years. And the very last thing that he amends is the thing that the defendant says is the issue that makes this decision wrong. So, as I say, to blame Mr. Steele for not having a clear recollection of his conferences with the defendant and with the witnesses, it's not his fault that it comes 10 years after. I'd like to get back to the other reasons that Brown's testimony was not only not helpful, but may have been harmful. The defendant's girlfriend says that she arrived to pick up her son between 12 and 1 o'clock that night. Not only does Brown not mention her arrival, which he couldn't have missed if he's sitting in the driveway and awake all night long. He'd certainly see this girl drive up. But not only that, but Brown claims that the next morning, 5 or 6 o'clock in the morning, he comes in and he sees the defendant and his son on the couch together when, in fact, the defendant's girlfriend picked up his son around 12 or 1 o'clock that morning. Finally, Mr. Brown probably didn't want to testify. He had a warrant out against him. He had a job that he'd have to miss. He said if he had to come in with a subpoena, he'd have no choice, but that's not the kind of witness you want to have if someone dragged in against their own free will. Let's talk about what Mr. Steele knew about Brown. The defendant said he talked to Steele about Brown, but Mr. Steele said, I already had people saying that I wasn't home, so he didn't want to call it. Now, that means that Mr. Steele did know about Mr. Brown. And I don't think you can say investigation requires you to call someone up, tell them to come into your office, meet with them, sit down and talk to them, when what you know is that he's a person that would say he was at home. My uncle would say I was at home all that night. Does Steele then require to go interview this man when he knows exactly what he would say, which is I would say that the defendant was there all night? And he's already got the defendant's aunt, and he's already got the defendant's grandmother that will say exactly that same thing. And so I think it is a very reasonable, tactical decision to say we don't need any more because I've already got people that will testify that you were home that night. That's all the investigation that he needed to do. He knew what Brown would testify to, and he didn't need any more than that. I think it's kind of interesting in referring to another witness that defendant claimed Steele should have called, not raised in this appeal, but Steele is asked why he wouldn't call a witness. And he said there would be two reasons for not calling a known witness. One is that you couldn't find him, and two is that he thought he would not be a good witness for the defense. And that's kind of what Steele did here when he says I already have people saying that I was at home, that the defendant was home, so we don't need more. And I think Steele directly testified at the hearing that, and I'm quoting him here, if you call more than two or three witnesses to say the same thing, then the jury tends not to pay attention. And he also noted that there was a need to impart information to the jury without being redundant. So we get back to the fact that you've got two witnesses that were relatives of the defendant that are going to say he was home all night long. What does it help to have a third witness who's also a relative, who's not nearly as good a witness as the two that are called, to also say he was home? Now the counsel for the defendant says, well, he called five witnesses to deal with whether the defendant was ever known by the last name as Steele. But I think it's interesting, again, that Mr. Steele considered the identification of the defendant as the shooter, not his alibi, but the identification of the defendant as the shooter. He said that was the heart of the state's case. That's what was important, was it? Was the person that was identified by the man that was shot, was the person that was identified by the people that were in the house nearby, was that the defendant? That was what he thought was important. And given the fact that the state brought in two witnesses, one the defendant's former girlfriend and one a local police officer that both testified that the defendant was known as DeJuan Smith, that that was a reasonable thing to do. So for all of the reasons stated here and those stated in our brief, we would ask that this court affirm. Thank you, counsel. Counsel? Thank you, Your Honor. The state brings up, it's just a zone. Who do you stay with? Who do you are most with? It's your family. Your family is going to be your alibi a great deal of the time. That doesn't mean that they aren't as important. That just means that they are the people you are with and they're the important ones to call. The important part is the investigation in which the state seemingly takes the position that Steele made a sound tactical decision not to investigate Mr. Brown. But I would suggest to Your Honors that that's just not correct and that in People v. McHale, which we cite to in our brief, the court McHale found that counsel was ineffective for failing to investigate an alibi witness before deciding not to call him. And the need to investigate, interview, talk with, find out what the witness is going to testify to or be able to testify to is very important. And it's not necessarily the failure to call him. It's the failure to investigate and the failure to have him come and testify that we're pointing to as an effective assistance of counsel. We also cite to a case called Washington v. Smith. It's a federal case out of the Seventh Circuit in which they have good language in there about three more witnesses who are going to testify about an alibi is not redundant. And that is one of the key points that we would want to bring to Your Honors' attention. This is not just going to be redundant. This is a man who's going to be able to maybe tip the balance of the scale of justice, tip the balance of the evidence such that the jury could not believe the state's evidence. And the state's evidence had a lot of problems. I mean, their three main witnesses were convicted felons, and one of the co-defendants got seven years for a home invasion in which he would be sentenced to natural life imprisonment if he was tried without this deal. The state points to the defendant's girlfriend, but she did not testify at the evidentiary hearing, and we're not sure when or what happened with picking up the defendant's son. All that is is from an affidavit. She never comes in and testifies. Consequently, Your Honors, we would argue that we have made a substantial showing that there was a constitutional violation, and that Your Honors should reverse and remand for a new trial. Do you have no other questions? Thanks, Counsel. Appreciate it.